UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

PAM KNIGHT                                                                                          PLAINTIFF

VS                                                              CIVIL ACTION NO. 3:06CV139 DPJ-JCS

MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY                                      DEFENDANT

MEMORANDUM OPINION AND ORDER

This sexual harassment case is before the Court on motion of Defendant Mississippi Department of Public Safety ("DPS") for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff Pam Knight responded in opposition. Knight also filed a motion for partial summary judgment as to her sexual harassment and intentional infliction of emotional distress claims, to which Defendant has responded. The Court, having considered the memoranda and submissions of the parties, along with the pertinent authorities, finds that Defendant's motion should be granted in part and denied in part, as set forth herein, and Plaintiff's motion should be denied.

I.      FACTS AND PROCEDURAL HISTORY

Plaintiff began her employment with DPS in November 1998 as an Accounting Auditor I. She received several promotions over the years and continues to work for DPS in the position of Chief Fiscal Officer. Plaintiff claims that over a six-year period a co-worker, Ron Caulfield, sexually harassed her by making sexual comments and gestures and touching her in an inappropriate manner.

In 1999, Knight complained to her then-supervisor, Sidney Nester, that Caulfield's actions were making her uncomfortable. Nester told her that Caulfield did not mean anything by

it and that was just the way he was. Around October 2002, Plaintiff approached her new supervisor, Greg Gregory, and told him that Caulfield was making inappropriate comments and touching her. Gregory told her that he was aware of a problem with Caulfield's behavior but he did not know what to do about it. Plaintiff claims the harassment continued.

Plaintiff alleges that in late July 2004, Caulfield repeatedly tried to grab her breasts despite her protests. When she tried to leave her office, he blocked her egress and rubbed his buttocks against her. After this incident, Knight confronted Caulfield and told him the harassing conduct had to stop. On August 11, 2004, Plaintiff told Gregory about the incident and her confrontation with Caulfield. Gregory contacted the human resources director, Natalie Holmes, who in turn notified Internal Affairs. Gregory asked Plaintiff to write a statement regarding the incident, and she refused. To this point, Plaintiff had never submitted a written complaint and had never pursued her claims through Defendant's grievance procedures.

On November 10, 2004, Caulfield entered Plaintiff's office with a box of Christmas decorations and made sexual remarks and gestures using the items. Plaintiff told Holmes and Cheryl Lunsford, Director of Support Services, about the incident. Internal Affairs was again alerted, and on November 16, 2004, Knight agreed to file a written statement and submitted to an interview. Internal Affairs investigated the matter but did not prepare administrative charges due to Caulfield's resignation on December 13, 2004.

On November 10, 2005, Plaintiff filed suit in state court, Defendant subsequently removed the case to this Court, and Plaintiff then filed an amended complaint. In her Amended Complaint, Knight claims that she was subjected to sexual harassment and retaliation in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, during her employment with DPS. In addition, Plaintiff

alleges state law claims of intentional and/or negligent infliction of emotional distress.

Defendant moved for summary judgment on Plaintiff's sexual harassment and intentional and/or negligent infliction of emotional distress claims (but did not address Plaintiff's retaliation claim).[1]  In response, Plaintiff conceded her negligent infliction of emotional distress claim and moved for summary judgment in her favor on sexual harassment and intentional infliction of emotional distress.  As such, the issues before the Court are whether summary judgment is appropriate as to these two claims.

II.     ANALYSIS

Summary judgment is warranted under Rule 56 (c) of the Federal Rules of Civil Procedure when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56 (c).  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact.  *Id.* at 323.  The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."  *Id.* at 324.

---

[1] Because Plaintiff's retaliation claim is not part of this motion, the Court did not include the factual basis for that claim herein.

In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when ... both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

A.  Sexual Harassment

A plaintiff can establish a claim for sexual harassment by proving that the harassment created a hostile or abusive working environment. *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005); *Woods v. Delta Beverage Group, Inc.*, 274 F.3d 295, 298 (5th Cir. 2001). To establish a hostile work environment claim, a plaintiff must demonstrate that: (1) she is a member of a protected group; (2) she was the victim of uninvited sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action. *Harvill*, 433 F.3d at 434. Here, only the fifth element is in dispute.

"When a company, once informed of allegations of sexual harassment, takes prompt remedial action to protect the claimant, the company may avoid Title VII liability." *Nash v Electrospace Sys. Inc.*, 9 F.3d 401, 402 (5th Cir. 1993); *see also Harvill*, 433 F.3d at 437; *Hockman v. Westward Commc'ns, L.L.C.*, 407 F.3d 317 (5th Cir. 2004). "Prompt remedial action must be reasonably calculated to end the harassment." *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 615 (5th Cir. 1999) (cited in *Harvill*, 433 F.3d at 437).

Additionally, the Fifth Circuit Court of Appeals has looked to "whether the plaintiff reasonably took advantage of corrective opportunities provided by the employer" in the context of considering satisfaction of the fifth element. *Harvill*, 433 F.3d at 437; *Hockman*, 407 F.3d at 329 (citing *Woods*, 274 F.3d at 300 n.3). "Nonetheless, if an employee believes that bringing a subsequent sexual harassment complaint would be futile, or 'it becomes objectively obvious that the employer has no real intention of stopping the harassment, the harassed employee is not obligated to go through the wasted motion of reporting the harassment." *Harvill*, 433 F.3d at 437 (quoting *Woods*, 274 F.3d at 300-01).

The Fifth Circuit Court of Appeals' decisions in *Harvill* and *Hockman*, two separate but related sexual harassment suits against a single employer, are particularly instructive. There, the plaintiffs reported alleged harassment by a co-worker to their immediate supervisor who investigated the allegations and found them meritless. The employer's anti-harassment policies provided: "If speaking with the supervisor did not provide sufficient recourse, then the employee must direct her complaint to the Director of Human Resources." *Harvil*, 433 F.3d at 432; *see also Hockman*, 407 F.3d at 321. Neither Harvil nor Hockman contacted human resources, citing the supervisor's explicit instruction "never to go above her head." *Hockman*, 407 F.3d at 323; *see also Harvil*, 433 F.3d at 433.

The Fifth Circuit affirmed summary judgment for the employer and found that both plaintiffs had unreasonably failed to bring her complaint to a "higher-echelon" employee once dissatisfied with the supervisor's response. The court noted that both employees were provided copies of a handbook containing the anti-harassment policy and signed acknowledgments that they had received the handbook. Finally, the court also observed that once the plaintiffs' counsel

5

sent a letter to the director of human resources detailing the allegations, the director of human resources "acted swiftly in taking remedial measures and the harassment ceased." *Harvill*, 433 F.3d at 439 (noting that both women stated that the harassment "completely ceased" after the attorney's letter).

In the instant case, Defendant asserts that Plaintiff's sexual harassment claim must fail because on several occasions she failed to take advantage of corrective opportunities provided by Defendant's policies and when she finally did follow the proper procedures, DPS took prompt remedial action. The State Personnel Handbook provides:

> No employee or applicant should endure workplace harassment. Any person believing he or she has been illegally harassed should immediately report the incident to management. The appointing authority shall take timely and appropriate corrective action.
> Any permanent state service employee . . . may file a grievance in accordance with the sexual harassment grievance procedure contained in Section 11.

Section 11 provides, in part:

> GRIEVANCE PROCEDURAL STEPS
>
> Step 1
>
> A.  An employee who has a grievable complaint arising from an action or inaction subject to the control of management must identify the grievance orally or in writing with his or her immediate supervisor within seven (7) working days of becoming aware of the cause of the complaint.
> B.  The immediate supervisor will have three (3) working days from the date of the initial discussion to orally inform the employee of his or her answer. (The supervisor shall write a memorandum for record and have the aggrieved employee sign it.)
> C.  *If the problem is not resolved, the employee may submit in writing (on SPB Form 1010-81) a description of the grievance* and the specific relief requested within three (3) working days following the immediate supervisor's verbal response . . . .

(Emphasis added).

It is undisputed that in 1999 and 2002 Plaintiff verbally complained about Caulfield's conduct to her supervisors, but she did not pursue the matter further. It is also undisputed that in August 2004, Plaintiff spoke to Gregory about the July incident but asked that the matter be kept confidential. In her deposition, Plaintiff testified:

> Q.  And as I understand that conversation you were simply apprising Mr. Gregory of what was going on and that you thought it was under control at that point?
> A.  Yes, sir.
> Q.  And it wasn't a formal complaint asking that the behavior be investigated?
> A.  No, sir.

Gregory nevertheless informed human resources, and according to Defendant, the matter was reported up the chain of command and eventually referred to the director of internal affairs. Gregory was then advised to obtain a written statement regarding the July 26th incident, but Plaintiff refused. Instead, she prepared the following:

> I have been asked by Greg Gregory to write a statement regarding the conversation that I had with him on or around August 11, 2204 and on or around August 25, 2004. I asked Mr. Gregory to keep the information that I discussed with him confidential and that I would let him know if I had any further concerns.
>
> On or around August 25, 2004, Mr. Gregory asked me to come to his office. He told me that he had discussed the conversation I had with him earlier in the month with someone in Human Resources. Mr. Gregory asked me to write a statement about our conversation so that there would be some type of documentation in the file.
>
> Mr. Gregory advised me today, September 7, 2004, that he spoke with Director Cheryl Lunsford and requested a statement from me today. I do not wish to make any statement in writing concerning the conversations that I had with Mr. Gregory.

During her deposition, Plaintiff confirmed that she declined to give a written statement regarding the July 26th incident:

> Q. Tell me about the conversation that's reflected within the memo that happened on August 25, 2004 with Mr. Gregory?
> A. I think that's when – I know the August 11th that would have been when I told him about the latest incident with Ron's behavior and that I spoke with Ron on my own. I want to say that's when he talked to me again on August 25th, that that's when he informed he went to his supervisor and told them that there could possibly be a problem. [sic]
> Q. An they asked you to write a statement as reflected in this memo?
> A. Yes, sir.
> Q. You chose not to write a statement, is that correct?
> A. That's correct.

When asked directly if she had complied with Defendant's grievance procedure in August 2004, Plaintiff testified that she had not.

> Q. Now, did you file a grievance regarding Ron Caulfield's treatment of you with your supervisor?
> . . .
> A. I did not file a grievance.
> Q. With your supervisor?
> A. With my supervisor. I made a verbal complaint to Sidney Nester. I also made a verbal complaint to Greg Gregory. I don't know if you would consider that a formal - - what did it say? But no, I did not file a grievance according to this information.
> Q. You didn't file a grievance regarding Ron Caulfield's treatment of you with anyone, is that correct?
> A. I did make a verbal complaint to Sidney Nester and to Greg Gregory but I did not file a grievance. Are you talking about a written grievance?
> Q. Yes, I am.
> A. I didn't file a written grievance with them.

Even assuming Plaintiff's verbal complaints to Nester and Gregory in 1999, 2002, and August 2004 would satisfy Step 1 A of Defendant's grievance procedure (which allows for a verbal complaint), she declined (or refused) to follow-up these complaints with a written statement as provided by Step 1 C. The 1999 and 2002 complaints thus appear to be indistinguishable from those found to be insufficient in *Harvill* and *Hockman*. The August 2004 complaint is somewhat different. Despite her objections, that complaint reached the attention of

8

upper level management, a fact not present in *Harvill* and *Hockman*. Nonetheless, whether or not the August 2004 complaint would satisfy a plaintiff's duties as explained in *Harvill* and *Hockman*, there is no dispute that Plaintiff filed a formal grievance in November. This time, Plaintiff reported Caulfield's conduct, prepared a formal written statement and cooperated in the investigation. Defendant appears to concede as much, arguing instead that when Knight did follow the formal grievance process, it took "immediate steps to formally investigate the allegations."

"[A]n employer must take prompt and appropriate remedial action, 'reasonably calculated' to end the harassment." *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 479 (5th Cir. 1989) (quoting *Jones v. Flagship Int'l*, 793 F.2d 714, 719-20 (5th Cir. 1986)). "What is appropriate remedial action will necessarily depend on the particular facts of the case-the severity and persistence of the harassment, and the effectiveness of any initial remedial steps." *Waltman*, 875 F.2d at 479; *see also Harvill*, 433 F.3d at 433 (noting that employer had "acted swiftly in taking remedial measures" where it ordered that the accused harasser and the complainant no longer work in "close physical proximity" and the complainant stated that all harassment ceased); *Hockman*, 407 F.3d at 323 (same).

The question for the Court is whether, as a matter of law, DPS took remedial measures "reasonably calculated to end the harassment." The record reflects that on November 16, Plaintiff turned over a formal written statement and submitted to an interview. Investigators also interviewed Caulfield on November 16 and other employees on November 19 and 22. No administrative charges were filed against Caulfield, and he resigned on December 13, 2004, while Plaintiff was on medical leave. DPS issued findings on the investigation January 25, 2005.

9

Holmes testified in her capacity as the Defendant's Rule 30(b)(6) designee as follows:

> Q. After [Plaintiff's] interview what happened next?
> A. I do not know.
> Q. What was the conclusion of the investigation?
> A. There was no conclusion that was brought back to Human Resources because of the fact that Mr. Caulfield maybe a month later came into HR and resigned his position, so I don't know where the internal investigations people were at that time.
> Q. So did his resignation cease the investigation?
> A. I am not aware of that at all.

In the context of discussing Defendant's investigation techniques, Plaintiff testified that Defendant placed Caulfield in an office across the hall from her:

> Q. What did the agency do that was harsh?
> A. The way that they questioned me; how they interrogated me for over two hours; how they implied that I wanted to have an affair with this gentlemen; which is not true.
> . . .
> Q. Is there anything else that you contend that the agency did that was harsh?
> A. When they rearranged the office in 2004 they put that gentleman across the hallway from me so that while I was sitting at my desk he would be able to see me.
> Q. When in 2004 did that take place?
> A. November.

Finally, Plaintiff explained in her deposition that she was told in November 2004 that Caulfield was asked to leave her alone, but he did not:

> Q. Do you know whether or not Mr. Caulfield had been instructed not to go to your office at the time by supervisory personnel?
> A. I was told by my supervisor, Cindy Crocker, that Ron had been told to leave me alone. She told me that some time in November. And I had to go to her on a couple of occasions to tell her that he was still coming to my office and still trying to talk to me, you know, I had to go to her and tell her that he was not leaving me alone.

The Court, mindful of its obligation to view the facts in the light most favorable to the non-movant, finds that genuine issues of material fact exist as to whether Defendant's reaction to

10

the allegations was an appropriate remedial action under the circumstances. *Compare Skidmore v. Precision Printing and Pkg., Inc.*, 188 F.3d 606, 616 (5th Cir. 1999) (holding employer's response constituted "prompt remedial action" as a matter of law where supervisor instructed the accused harasser to leave the plaintiff alone and moved the plaintiff to a new shift and plaintiff conceded that alleged harasser did not touch her or say anything offensive to her again); *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 263 (5th Cir. 1999) (Jones, J., with two Judges concurring in result) (affirming judgment as a matter of law for an employer who promptly punished the harassing employee, resulting in "complete cessation of harassment"); *Waymire v. Harris County*, 86 F.3d 424, 429 (5th Cir. 1996) (affirming judgment as a matter of law for employer who immediately reprimanded harasser and harassment stopped, despite the fact that employer waited three months for completion of investigation to "formally reprimand" employee and place letter in his permanent file).

      B.      <u>Intentional Infliction of Emotional Distress</u>

Defendant submits that Plaintiff's intentional infliction of emotional distress claim must fail because the facts do not support a finding that DPS subjected Plaintiff to extreme and outrageous conduct. As explained by the Mississippi Court of Appeals,

> In order for [a Plaintiff] to prevail on a claim of intentional infliction of emotional distress, he must prove [Defendant's] conduct to be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *Brown v. Inter-City Fed. Bank*, 738 So. 2d 262, 264 (Miss. Ct. App. 1999). Under our law, liability does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities. *Id.* Furthermore, damages for intentional infliction of emotional distress are usually not recoverable in mere employment disputes. *Id.* "Only in the most unusual cases does the conduct move out of the realm of an ordinary employment dispute into the classification of extreme and outrageous, as required for the tort of intentional infliction of emotional distress."

*Prunty v. Arkansas Freightways, Inc.*, 16 F.3d 649, 654 (5th Cir. 1994).

*Raiola v. Chevron U.S.A., Inc.*, 872 So. 2d 79, 85 (Miss. Ct. App. 2004).

For clarification, the Court is not deciding if Caulfield's conduct constituted extreme and outrageous conduct; Plaintiff's claim is against her employer, DPS.  "Under Mississippi law, 'an employer is not liable for an employee's intentional or criminal acts unless the employer either authorized or ratified the act.'" *Hatley v. Hilton Hotels Corp.*, 308 F.3d 473, 476 (5th Cir. 2002) (quoting *Tichenor v. Roman Catholic Church of Archdiocese of New Orleans*, 32 F.3d 953, 959 (5th Cir. 1994)); *see also McClinton v. Delta Pride Catfish, Inc.*, 792 So. 2d 968, 976 (Miss. 2001).

Moreover, there is a distinction between an employer's liability for sexual harassment under Title VII and intentional infliction of emotional distress.  For example, in *Hatley*, the district court granted judgment as a matter of law for the employer on the plaintiff's sexual harassment and intentional infliction of emotional distress claims following a jury verdict for the plaintiff.  308 F. 3d at 476.  The Fifth Circuit affirmed the decision on the intentional infliction of emotional distress claim and reversed the decision on the sexual harassment claim.  *Id.*  On the sexual harassment claim, the court found that the evidence supported the jury's finding that the employer did not take reasonable measures to correct or prevent the harassment.  *Id.*  But on the intentional infliction of emotional distress claim, the court found no error, citing the high standard in Mississippi.  *Id.*  The court noted that while conduct may violate Title VII as sexual harassment, it does not necessarily become intentional infliction of emotional distress.  *Id.*  The court concluded that as a matter of law, the employer's "failure to respond adequately to the plaintiffs' complaints, while negligent, does not rise to the level of outrageousness necessary to

12

establish intentional infliction of emotional distress." *Id.*

Here, Plaintiff argues that "Defendant is liable for Mr. Caulfield's sexual harassment of Mrs. Knight as the Defendant ratified Mr. Caulfield's actions by refusing to properly investigate Mrs. Knight's complaints of sexual harassment for years."  The problem with this argument is that Plaintiff chose not to pursue her complaints in 1999 and 2002 past her immediate supervisor. More importantly, when Gregory and Holmes tried to investigate the allegations in August 2004, Plaintiff refused to cooperate, declined to submit a written statement of the allegations, insisted that her complaints remain confidential, and assured Gregory that the situation was "under control."  In fact, Defendant's decision not to investigate the allegations until November 2004 was consistent with Plaintiff's wishes at that time.

Even viewing the evidence in the light most favorable to Plaintiff, considering Mississippi law on the subject, and the high standard set by the Mississippi Supreme Court, the Court finds as a matter of law that Defendant's response failed to rise to the level of "extreme and outrageous" conduct.  *See Jenkins v. City of Grenada, Miss.*, 813 F. Supp. 443, 446 (N.D. Miss. 1993) ("Meeting the requisite elements of a claim for intentional infliction of emotional distress is a tall order in Mississippi."); *Raiola*, 872 So. 2d 79 (finding that plaintiff's claims that employer called him a thief and made remarks about his Italian heritage were not so extreme and outrageous as to justify redress); *Speed v. Scott*, 787 So. 2d 626 (Miss. 2001) (holding that employer's repeated references to plaintiff as a liar and a thief did not constitute a claim for intentional infliction of emotional distress).

The Court concludes that Defendant's motion for summary judgment as to Plaintiff's intentional infliction of emotional distress claim should be granted.

III.    Conclusion

Based on the foregoing, the Court holds as follows: (1) Defendant's motion for summary judgment as to Plaintiff's sexual harassment claim is denied; (2) Defendant's motion for summary judgment as to Plaintiff's intentional infliction of emotional distress claim and negligent infliction of emotional distress claim is granted; and (3) Plaintiff's motion for partial summary judgment is denied.

**SO ORDERED AND ADJUDGED** this the 27th day of July, 2007.

    s/ *Daniel P. Jordan III*
    UNITED STATES DISTRICT JUDGE